The second case of the day, Church of Our Lord and Savior v. City of Markham, Illinois. Mr. Starrett. Good morning, Your Honors. May it please the Court. My name is Noel Starrett. I represent the Church of Our Lord and Savior, Jesus Christ. Your Honors, this case is not about whether or not this tiny church had sufficient off-street parking. Rather, it's about the right to assemble for worship, which Congress recognizes as at the very core of the First Amendment free exercise of religion. The District Court was wrong not to address the merits of the Church's facial claims and as-applied claims under the Religious Land Use and Institutionalized Persons Act and the state RFRA. The facial claims challenge how the City unreasonably limits and how the City unequally treats religious assemblies within its jurisdiction. And the as-applied substantial burden claims challenge the City's final and definitive decision on August 21, 2013, to deny the Church zoning approval despite this critical fact. The Church expressed its willingness to have its zoning approval conditioned on compliance with the City's off-street parking requirements. And I'll quote, and I think this is the important quote because this was exactly what the Church's attorneys told the City Council on that day. We are asking, and I quote, that the City Council, if it has to impose some additional restrictions, including parking restrictions or whatever, that they do that without attempting to force the Church not to be able to hold services. This is a very unique case because, in some sense, the City got the cart before the horse. In this case, the City had already approved the occupancy permit. The Church was already meeting. If I understand the district court's opinion correctly, although the court used the word moot, perhaps improvidently, the main point the district court was making was that the Church had not introduced any evidence supporting its claim for damages. I looked in your opening brief to find any reference to evidence in the record supporting damages, and there was none. Have I misread your opening brief in some respect? No, I would point the court to page 48. That's where we've identified the... That's where you list the kinds of damages you might seek. That's not my question. My question is, where is there evidence in the record supporting these claims? This case is decided on summary judgment, and there has to be evidence. It's not enough just to list what you want. You have to have proof. Where do I look in the record to find the proof? Record 139-2, Pastor McCracken's sworn declaration, which describes not only the harm that was done to the Church because of the zoning denial. Frankly, the inference that the court should have made on summary judgment, because all the inferences should have been read in our favor, is the fact that you're looking at a church that had just spent thousands of dollars to update their building at the city's direction. They had just paid for the condition to use permit application, which was denied. That's damage. The church had just paid for their attorney's fees and expenses that they incurred pursuing the zoning. Fees and expenses are not damages. Under the American rule, parties bear their own attorney's fees in the absence of a fee-shifting statute. I'm not arguing about our damages. What are the damages supported by the record? Could you just lay them out for me? Yes. My mistake, I'm not arguing that my fees are part of it or litigation fees in the Northern District Court. I'm arguing that the attorney's fees and costs for the church's attorney that preceded and pursued the zoning approval are a measure of damages. This court has also recognized... Is that provided anywhere in the Religious Land Use Act? The Religious Land Use Act only provides... Look, if you say our damages are our attorney's fees, you've got a whole lot of problems. Are there any other damages? Yes. You might want to concentrate on them. I'll do that, Your Honor. The cost of the condition use permit application is a damage to recover. The aggravation, inconvenience, and humiliation that the church suffered is a damage. That's recognized also in a RLUIPA case that this court has handled in the World Outreach case. In the World Outreach case, the court took the case up twice on appeal. In that case, the court sent it back for a decision on the substantial burden claim and recognizing that the church could show and receive damages for the way in which the substantial burden and the zoning denial distracted the leadership of the organization. The difficulty in these situations is this is not a company that's making income, and so the damage is a lot less tangible. What you have is a congregation that has invested itself into a building and then said, you can't meet there anymore. We are pulling the zoning out from under you. They're left with the fact that their growth is stunted, their congregation has suffered, their efforts to serve the community is thwarted, and so that's where the damages are. Again, they're supported by the pastor's sworn testimony. The district court didn't read the testimony or didn't consider them, and I think it was an error for the court not to construe this evidence in the light most fully favorable to the church. That addresses this mootness claim, and the burden is actually on the city, which is a heavy burden to show that these damages were made. No, mootness is, as I've already said, it's a misnomer. The question is whether there are damages, provable damages with support in the record. And, of course, that's the plaintiff's burden.  Yes. That's why I've tried to free this from any discussion of the word mootness. And I think Your Honor's correct, and I think the difficulty here is in a religious freedom case, what the measure of damage is for how your religious exercise has been burdened is a difficult one, and so that's why we cite Kerry B. Pythas, the Statura case, the type of 1983 damages that reflect the intangible natures of these damages. So that's the nature of our damages. They are supported by the sworn testimony of our pastor, Reginald McCracken. Mr. Kerr, the church didn't seek a variance as to the parking requirements until 2016, right? That's correct. So what are we going to do with legal damages between 2013 and 17? Are we supposed to consider that? Yes, Your Honor, because that's where the burden is. That's where the harm is because essentially what we're looking at, and the reason why the church didn't seek a variance is because the church had already been willing to go beyond what a variance would provide. Again, what the church presented to the city, and a lot of this stems from the fact that the city council was operating from a parking report that it would not share to the church. The building inspector came out to the property, did his own report, gave it to the church, so the church thought, okay, fine. The planning commission has this report, and the church is wondering, well, what parking restrictions do you want? Impose the condition on our zoning approval, and we'll comply with it, just like they had done with the building issues that were pointed out. And so what happened was they offered to have their zoning approval conditioned on full compliance with the off-street parking. That's exactly what happened before the city council. When that was denied, the church had no reason to think that the city was going to grant the zoning approval by allowing them to provide less parking. They had already offered to provide full compliant parking. And so that's what happened. And so they were left with nowhere else to turn but the courts. There was no other body that was going to side this case. When the city council says, our concern is parking, and we're not even willing to condition your zoning approval on full compliance with parking, this court has said under the St. Constantine case that when a church expresses a willingness to impose conditions on itself to meet the interests that are asserted at the city council level, then the city council can't justify their denial. And it is a substantial burden on the religious exercise clause, I mean the religious exercise provision of RLUIPA. Council, why is it important to the church to be considered a permitted use as opposed to a conforming use under a conditional use permit with a parking barrier? Well, as we put out in our brief, and I think the Mandelker Treatise that we cited indicates, when you're permitted use as a right, that provides the church a lot more certainty. In other words, if they're permitted use, there's nothing the city can do to remove their zoning approval. A number of the cases that were cited involve when a special use or a condition use permit is approved. What happens is then if you violate those conditions, then you can have your zoning pulled out from under you. If you're permitted as a right, you can't have your zoning removed out from under you. You still have to comply with building and parking code. But then, as the court indicated in the World Outreach case, those are usually handled through building code citations, fines, off-street parking fines. And frankly, that's why this court held in World Outreach. Off-street parking issues are a very minor issue. They're not a compelling interest to shut a church down, especially an existing one that had the support of all of its neighbors, that had legal parking on the street at Sundays. Again, a significant number of the church is here today. We're not talking about a significant issue at all. And frankly, had the interest of the city truly been in off-street parking, it had every right, and the city hasn't shown the authority that would have limited the city council from saying, we'll grant you your conditional use permit, and we'll impose a condition, the one that you're willing to abide by, which says that you just need to comply with our off-street parking. That's exactly what the city ultimately ended up doing in 2017. On their own motion, they ended up granting us a conditional use permit. We didn't go back and seek one because we were still challenging our argument that we're a permitted use. We believe we're a permitted use. And I want to turn to that issue because I think it's critical. And before you get there, it's correct then that the church did reject that conditional use permit, correct? We didn't sign it because they had included a key provision in the conditional use permit, which is that by signing it, we agree with all of its terms. And we were still litigating in this court the underlying zoning of this. Because when I got involved in this case, which was after the case survived the motion to dismiss, I took a look at the code and I said, there's either no zone where a church is permitted as a right, so we have this unreasonable limitation on equal terms problem, or we're permitted as a right where we're at. And so that's why we engaged in discovery to pin the city to one position or the other. And what the city did is they, under Rule 36, admitted that as applied to a church in our R3 zone, we're permitted use. And so I read that as we are permitted as a right. Under World Outreach, they then did not have a basis upon which to impose a substantial use, a conditional use permit requirement on us. And that's where I moved for partial summary judgment before the district court. Even in the briefing today in this court, the city still contends that there is a zone out there where the churches are permitted as a right. And again, the distinction is critical. Because if they're permitted as a right, that means they can go somewhere without having to go through the prior restraint of the political process, appealing to a discretionary board of non-professionals, as this court described it in the DeGruyere case, for permission. Again, this is just a small group that we're just meeting in their pastor's home. And I think they, at that point, they considered themselves a church. And I think the problem with a lot of this zoning code is it's a one-size-fits-all. You know, what is a church anyways? If it's two or three more that are gathered together in Jesus' name, as the Bible says, is that a church? Is it when you're incorporated? We're not disputing the fact that we're a church. The problem is, as we were meeting at the pastor's home, there came a point where they said, you need a condition use permit prop. And we said, okay, well, what do we need? And we applied for one. And then we said, well, what are our building problems? They identified it, and we addressed it. The building inspector says, well, I looked, you have 20 parking spaces at these three lots. So we thought we were fine. We get to the planning commission, and they've got this separate report. And it says that we have all these parking problems. And we said, give us the report. And they said, well, we don't need to give it to you. We don't need to give you this report unless we use it or integrate it in our decision. And the church says, well, at least give us time to comply with this report. Planning commission could have recommended approval of the zoning permit with the condition that we comply with parking. It didn't. City council, the same thing happened. We show up. The city council has this parking report. And the pastor, Pastor McCracken, and the attorney stood before the city council. And again, that key quote, I think, is very important. And it's at record 139-6. We are asking that the city council, if it has to impose some additional restrictions, including parking restrictions or whatever, that they do that without forcing this church not to be able to hold services. There was no reason that this church could not have been accommodated and allowed to continue. The church expressed its willingness to fully comply with parking. The city, in 2017, gave us a condition use permit process and says, here are our parking specifications. Now you've got time to comply with them. The city exhibited exactly what should have happened in 2013. Had it done what all the city council had to do in August 2013, is condition the church's zoning approval in compliance with the city's off-street parking requirements. Had the city done that, there would have been no harm to the church. Because the church would have been continuing to meet and enjoying its religious exercise without the uncertainty, the harm to its growth, the discouragement to its congregation, the humiliation before the city with respect to... And I see I've got a minute left. May I reserve that for rebuttal? Thank you. Thank you, Mr. Smith. May it please the court. My name is Neal Smith. I represent the city of Markham in this matter. And this is a case where the church didn't just come to the city saying, what's the parking requirement? What do we have to do? The parking requirements are published in the zoning code. They always have been. And this is a church that always operated in the city and it was never forced to close. The city asked them to come before the city council and seek a conditional use. They only did that after litigation realities in the 6th District Circuit Court of Cook County required them to do that. And when they came to the village or to the city seeking a conditional use, they didn't really provide a meaningful conditional use. They didn't... Well, key to that is they didn't ask for the parking requirements, the parking requirements that are published in the city's zoning code. So they came to the city seemingly asking for the city to guess what they were proposing. And they had an obligation to seek variances. And it's not a case where they've ever been prohibited from operating. So what happened by not seeking a variance? Well, it was really didn't allow the record before the court to get developed, or before the city to get developed. And that's one of the things about ripeness and why the courts like to see at least a final determination by the city based on a meaningful application. It develops a full record. The court knows how the city will apply regulation. It may be that seeking a variance gets the applicant the relief they want. That's how it played out in this case when Judge Guzman finally ordered the city. Upon its stream of objections, Judge Guzman finally ordered them to go down and seek a variance. And he did that by his August 2016 order. They applied in 2017. They got relief that now they like. They certainly didn't amend their complaint. But are there districts in the city in which a church is a permitted use? And just to clarify, permitted use, I think you mean permitted use without having to go through a special use? Correct. Distinguishing it from conditional use. Correct. So, yes. And my legal opinion is yes. There's the C1, 2, and 3 districts and the manufacturing districts. Those districts provide that. They don't specifically, they list several uses, but they don't say these are the only uses that are permitted. The code provides these uses and uses like them, uses analogous to them. So our view is that, our legal opinion is that there are places where the churches can locate as of right. And, of course, in this case, that's not the case. The church was laser focused on this property only. This is the property where the pastor had personally lived in since 1985. Converted the church or converted it home to a place of worship. And he said, I never looked at any other places in the city. We never even considered it. So we've really got to focus in on this R3 district, but there are other districts where they're permitted. To follow up then, there would not be a church as a permitted use in an R1 or an R2? Correct. For the residential uses, R1, R2, R3. The churches are conditional uses, listed as conditional uses. So the city's position is to operate legally, this church would need both a conditional use permit with a parking variance. Is that correct? That's right. Because in this case, the code requires 23 parking spaces based on the measure of parking, that being the amount of seating. And if a church comes to the city asking for that but wants to provide less parking, then they would need a variance. That's correct. That's correct. And by the way, whether the church is permitted in other districts other than the R3, as I said, it was never focused on this litigation. It's not relevant. They don't have standing to raise that. And by the way, there's lots of churches in the city, Mark, and there's 32 per the testimony of their economic development director, John Thompson, in his deposition. Could you give us the record site for that, if you have it? Yes, I do have it. It's the John Thompson deposition. That was an exhibit. So document number 130 is the exhibits for the summary judgment, and the John Thompson deposition is exhibit 7. Thank you. So the church, it's very disingenuous for the church to come and say, all we ever wanted was to know what the city was asking for, and then we were going to provide it. That's just not the case. I mean, the zoning code is published. The parking is published. They had an attorney down below helping them out. And their proposal, the variance they proposed was just to provide a house with a driveway. So that's, you know, it's disingenuous to say they just wanted to know what the city was going to require. Just to touch on a couple of other things, RLUIPA kind of has three, or at least the church focused in on the three elements of RLUIPA, the substantial burden portion, the unreasonable limitations portion, and the equal protection portions. So the equal protections portion and the unreasonable limitations portions are portions that it doesn't have standing to raise. Their arguments concern districts they're not located in. And then the substantial burden claims go back to this fact that they always knew what was required of them and they were always operating. How can it be a substantial burden when the city is saying you've got to submit a meaningful application and in the meantime, you know, you're operating where you established yourself without building permits where you always located. So the substantial burden requirement has to have some teeth in this situation. There's definitely no substantial burden when you get to operate normally while seeking additional use. So if there's no additional questions, I'll summarize by saying that we request that you affirm the district court's grant summary judgment. Thank you. Thank you. In my limited time, I want to raise a very important point here. In the C1, C2, C3 manufacturing district, church is not permitted as a right, and the council knows that. We just litigated that in the original Bible Church case, which was cited. Another client of mine had to seek an injunction in order to be permitted in the C2 or C1 district, the original Bible Church case, which is cited at page 6 and 16 and 23 of my opening brief. And just looking at the code, which is attached as document 55-1, there's nowhere that's listed where a church is a permitted use. So for the council to come in here and represent that a church is permitted as a right in that district is, frankly, a little bit shocking to me. And if it is permitted as a right in C1, then it's definitely permitted a right in R3. And that's right where all the churches that he's referenced are located. And the fact that they may have permitted churches a long time ago doesn't mean that they're still providing the same treatment today. With that, we'd ask that this report be reversed. Thanks. Thank you, counsel. The case is taken under advisement.